## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ROBERT C. MARSHALL, | ) |
| | ) |
| Plaintiff, | )    No. 18-cv-549C |
| | ) |
| v. | )    Filed: June 25, 2024 |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>OPINION AND ORDER</u>

This litigation concerned a reservist's challenge to his separation from active duty both in 2012 and 2016–2017.  As the result of an initial remand from this Court, the Board for Correction of Naval Records ("BCNR") found Plaintiff's 2012 separation unlawful.  Nonetheless, Plaintiff contended the BCNR did not provide full and fitting relief.  During a second remand, the BCNR denied further relief on the 2012 separation claim and also considered and denied Plaintiff's 2016–2017 separation claim.  This latter claim, which became the primary focus of later litigation in this Court, alleged that when Plaintiff refused to execute a waiver of the sanctuary protection provided in 10 U.S.C. § 12686, the United States Marine Corps ("USMC") unlawfully withheld further active duty orders to facilitate Plaintiff's ongoing medical treatment.  Plaintiff alleged that the USMC had a statutory and regulatory obligation to retain him on duty and lacked authority to condition his active duty orders on a sanctuary waiver.  On cross-motions for judgment on the administrative record, Plaintiff prevailed in part on both his 2012 and 2016–2017 claims.

Before the Court is Plaintiff's Motion for Attorney's Fees.  For the reasons discussed below, the Court **DENIES** the motion.

# I.   BACKGROUND

This opinion assumes familiarity with the Court's decision on the merits.  *See Marshall v. United States*, 164 Fed. Cl. 580 (2023).  A summary of the facts and procedural history relevant to the resolution of Plaintiff's Motion follows.

## A.   Plaintiff's Relevant Medical History and Release from Active Duty in 2012.

In 2010, Plaintiff received mobilization orders to deploy to Afghanistan.  Admin. R. ("AR") 20, 1560–69, ECF No. 44.[1]  During a training exercise at Camp Lejeune, North Carolina, in January 2011, Plaintiff suffered an injury to his cervical spine.  AR 20, 100, 323–25. Nonetheless, Plaintiff deployed to Afghanistan in February 2011 and returned to Camp Lejeune in February 2012.  AR 20, 477, 1560–69.  Upon his return, Plaintiff completed a Physical Health Assessment, which noted Plaintiff's prior injury but determined him to be "fully medically ready[.]"  AR 21; *see* AR 114, 116.  Plaintiff was separated from active duty on April 27, 2012, without receiving a separation physical examination or pre-separation counseling.  AR 21.

Plaintiff returned to active duty from April 29 to May 25, 2012, to attend Civil Affairs School in Quantico, Virginia.  AR 21, 135.  In June 2012, Plaintiff experienced increased pain in his neck and right arm and underwent spinal fusion surgery in August 2012.  AR 21, 140.  The USMC placed Plaintiff on temporary limited duty status from August 16 to November 6, 2012. AR 21, 282.  On November 6, 2012, Plaintiff was cleared as fit for duty and removed from temporary limited duty status.  AR 21.  Beginning on January 2, 2013, Plaintiff served on active duty orders as a disability evaluation attorney with the Wounded Warrior Battalion at Camp Pendleton in California.  AR 22, 1245–46, 1581–87.  Plaintiff continued to serve on active duty

---

[1] For ease of reference, citations to the Administrative Record refer to the bates-labeled page numbers rather than the ECF page numbers.

for a number of years following this order.  AR 1171–72.

In April 2015, Plaintiff formally requested that the USMC conduct a line of duty determination regarding his 2011 injury.  AR 186–87.  In July 2015, an Inspector-Instructor in the Second Civil Affairs Group, Marine Force Reserve, concluded an investigation into Plaintiff's request and recommended a line of duty determination be made.  AR 178–82.  Later that month, the Commanding General of Force Headquarters Group also recommended to the Marine Corps Wounded Warrior Regiment that a line of duty determination be made to decide Plaintiff's entitlement to benefits.  AR 176.  Despite these recommendations, the USMC did not ultimately make a line of duty determination with regard to Plaintiff's injury.  AR 37.

Later, in March 2017, Plaintiff submitted an Administrative Action request, seeking compensation for his spinal fusion surgery in 2012.  AR 170–72.  In August 2017, after receiving no response from the Wounded Warrior Regiment, Plaintiff submitted an appeal directly to the Office of the Judge Advocate General of the Navy, Administrative Law Division ("Code 13"), contesting "the effective denial of [his] request for a line of duty benefits determination and medical hold status from" April 27 through December 8, 2012.  AR 157.  The Government later indicated that Code 13 did not adjudicate Plaintiff's appeal because the Wounded Warrior Regiment did not endorse it and provide an appeal package to Code 13.  Def.'s Unopposed Mot. for a Voluntary Remand at 2–3, ECF No. 9.

**B.      Plaintiff's Releases from Active Duty in 2016 and 2017.**

Plaintiff continued to experience medical issues related to his prior injuries while serving on active duty orders, including during the period when he was approaching 18 years of active duty service.  AR 1171–73.  A reservist who is on non-training active duty orders and is within two years of becoming eligible for retired pay under certain military retirement systems "may not

be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary." 10 U.S.C. § 12686(a). This two-year period after a reservist accumulates 18 years active duty time is commonly referred to as "sanctuary." The Secretary concerned may require, as a condition of an order to active duty, that a reservist waive "sanctuary" protection. *See* 10 U.S.C. § 12686(b). Such waiver authority is limited to circumstances where a reservist "is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a)." *Id.* At the time of his separation in 2016, Plaintiff was serving on active duty orders, subject to a sanctuary waiver, as a disability evaluation attorney at Camp Pendleton. AR 22, 1172, 2016–22. These orders specified an active duty period of October 7, 2015, through March 23, 2016—a total of 169 days. AR 1216. The orders made no mention of Plaintiff's request to waive sanctuary and expressly stated that Plaintiff "may become eligible for sanctuary zone protection." AR 1222.

On March 16, 2016, Plaintiff informed the Deployment Processing Center that he was suffering increased pain in his shoulder that required follow-up care. AR 22, 599–610. In light of his complex medical history and ongoing medical issues, the USMC Benefits Issuing Authority ("BIA") issued Plaintiff a Medical Hold from March 24 through June 24, 2016. AR 1228–29. However, because Plaintiff had over 18 years of active duty service at that time, Headquarters Marine Corps ("HQMC") refused to extend his orders. AR 23, 908. On March 23, 2016, the final day of his then-current orders, HQMC asked Plaintiff if he intended to execute a sanctuary waiver request in order to receive an extension of his orders for Medical Hold. AR 23, 909, 1233–36. At that time, however, Plaintiff was already traveling to his home of record. AR 23, 909, 1233. Since

4

no waiver had been signed, the USMC separated Plaintiff from active duty, notwithstanding his Medical Hold authorization.  AR 909.

On April 26, 2016, after further discussions with the HQMC, Plaintiff submitted a sanctuary waiver for the period of May 1 through September 30, 2016.  AR 1237–43, 1248.  While still separated from active duty, he underwent surgery for his shoulder injury in early May 2016.  AR 623–26.  In early June 2016, following his surgery, the BIA extended Plaintiff's Medical Hold authorization to September 24, 2016.  AR 23.  HQMC then issued Plaintiff active duty orders for the purpose of Medical Hold for the period of June 14 through September 24, 2016—a total of 103 days.  AR 23, 1255–60.  Like the October 2015 orders, the June 2016 orders made no mention of Plaintiff's sanctuary waiver and stated that he "may become eligible for sanctuary zone protection."  AR 23, 1260.

As the expiration of his sanctuary waiver drew near, HQMC asked Plaintiff to submit new sanctuary waiver requests to remain on active duty for Medical Hold.  AR 23, 1183.  Plaintiff filed two such requests in August 2016 to waive sanctuary for the period of September 24, 2016, through March 22, 2017.  AR 23, 1184.  The BIA subsequently extended Plaintiff's Medical Hold authorization to May 17, 2017, and HQMC issued Plaintiff two additional active duty orders.  AR 24, 1268–69.  The first order extended his active duty period (which began June 14, 2016) through December 9, 2016, for a total period of 179 days.  AR 1187, 1276.  The second order, which was a "back-to-back" order, created a new active duty period from December 10, 2016, through March 22, 2017 (a total of 103 days).  AR 24, 1276–81.  Plaintiff was told that, even though Medical Hold was authorized through mid-May, HQMC would extend his order only to March 22, 2017, because the period covered by his sanctuary waiver request ended on that date.  AR 23–24.  Plaintiff objected to the back-to-back order.  AR 1274.

As the end date of Plaintiff's order approached, HQMC advised him that it would not issue further active duty orders for Medical Hold past March 22, 2017, unless and until he submitted a request for a sanctuary waiver covering that period.  AR 24.  On March 6, 2017, Plaintiff filed a complaint with the Office of the Naval Inspector General contending that conditioning Medical Hold orders on a request for a sanctuary waiver is unlawful.  AR 1286–88.  Plaintiff again refused to submit a sanctuary waiver request and was separated from active duty on March 22, 2017, when his orders expired.  AR 1190, 1314.  At this time, the USMC did not provide Plaintiff with a separation physical examination or pre-separation counseling and did not determine whether Plaintiff was fit for duty.  AR 24, 1190.

On May 15, 2017, Plaintiff appealed the termination of his Medical Hold to Code 13, arguing that the USMC could not condition his active duty orders for Medical Hold on the execution of a sanctuary waiver.  AR 493–502.  The BIA endorsed the appeal and submitted a 382-page appeal package to Code 13 on December 11, 2017.  AR 491–872.  On July 30, 2018, Code 13 issued a decision denying Plaintiff's appeal.  AR 873–81.  Code 13 issued a revised decision again denying Plaintiff's appeal on August 29, 2018, determining that under the relevant statutes and regulations, the USMC could require Plaintiff to execute a sanctuary waiver as a condition of active duty orders for Medical Hold and that Plaintiff's refusal to waive sanctuary beyond March 22, 2017, meant Plaintiff withheld his consent for further active duty orders and voluntarily separated from active duty.  AR 883–91.  In March 2019, Plaintiff requested that the BCNR correct his record with respect to his March 2016 and March 2017 separations.  AR 892–94.  In February 2020, Plaintiff withdrew his BCNR application to pursue his claims in this Court. AR 984.

### C.   Procedural History

#### 1.   Plaintiff's Initial Complaint

On April 16, 2018, Plaintiff filed an initial Complaint in this Court alleging that his separation from active duty on April 27, 2012, was contrary to statute and military regulations. *See* Pl.'s Compl. ¶ 1, ECF No. 1.  Specifically, Plaintiff alleged that the USMC failed to make a line of duty determination following his pre-deployment training accident to determine Plaintiff's eligibility for benefits and then later unlawfully separated him after his deployment without a separation physical examination and pre-separation counseling as required by 10 U.S.C. §§ 1142 and 1145.  *Id.* ¶¶ 1, 3, 93–98.  Plaintiff further alleged that the USMC was required to continue him on active duty for Medical Hold because of the unresolved neck injury he suffered in the line of duty.  *Id.* ¶¶ 2, 116–19.  As relief, Plaintiff sought a correction of records to reflect that he remained in an active duty status until December 6, 2012 (30 days after he was found fit for duty) to account for out-processing time, travel to his home of record, and use of terminal leave.  *Id.* ¶ 132, pt. 1(B).  Plaintiff also requested back pay, allowances, and benefits to which he otherwise would have been entitled and out-of-pocket medical expenses that he would not have incurred but for his allegedly unlawful separation.  *Id.* ¶ 132, pt. 1(C)–(D).  Since Plaintiff was still pursuing his 2016–2017 separation claims at the administrative level, such claims were not raised in the initial Complaint.

After Plaintiff filed suit, counsel for the Government worked cooperatively with Plaintiff towards effective resolution of both the 2012 and 2016–2017 separation claims at the agency level. *See* Def.'s Unopposed Mot. for an Enlargement of Time at 1–2, ECF No. 6 (providing updates on Code 13's decisions relating to Plaintiff's appeals); Def.'s Unopposed Mot. for an Enlargement of Time at 1–2, ECF No. 8 (describing the parties' conversations after Code 13 issued its denial of

Plaintiff's appeal); ECF No. 9 at 3 (explaining the benefits of an agency remand).  On October 5, 2018, the Government filed an unopposed motion for a voluntary remand to the BCNR to consider Plaintiff's 2012 separation claims, which the Court subsequently granted.  ECF No. 9 at 1; Order Granting Remand at 1–2, ECF No. 10.

  2. <u>The BCNR's First Remand Decision</u>

  On November 12, 2019, the BCNR issued its remand decision and granted Plaintiff partial relief.  AR 42.  The BCNR determined that Plaintiff incurred his neck injury in the line of duty and that the USMC violated the law by failing to provide Plaintiff with a separation physical examination and pre-separation counseling before releasing him from active duty in April 2012. AR 40.  It also concluded that had such procedures been followed, it likely would have resulted in Plaintiff being placed in a Medical Hold status due to his neck injury.  *Id.*  As such, the BCNR recommended that Plaintiff's records be corrected to reflect that he was in an active duty for Medical Hold status from April 28, 2012 (the date following his release from active duty) through November 6, 2012 (the date on which Plaintiff was determined fit for duty).  AR 41.  The BCNR also recommended that Plaintiff receive back pay and active duty service credit for April 28, 2012, and the period of May 26 through November 9, 2012.  *Id.*  It concluded Plaintiff was not entitled to back pay and service credit for the period of April 29 through May 25, 2012, because Plaintiff was on active duty at Civil Affairs School during that time and should not receive double pay or credit for that period.  *Id.*  The BCNR also concluded that Plaintiff was not entitled to back pay or active duty service credit through December 6, 2012, as he requested, and that Plaintiff should not be compensated for out-of-pocket expenses without first seeking relief through the TRICARE administrative claims process.  *Id.*

3.      Plaintiff's First Amended Complaint

On February 17, 2020, Plaintiff filed his First Amended Complaint, alleging first that the BCNR erred in denying him the full relief he requested with respect to his 2012 separation claim. *See* Pl.'s First Am. Compl. ¶ 1, ECF No. 23.  In Part A of his Amended Complaint, Plaintiff sought an award of back pay and active duty service credit from November 7 to December 6, 2012, reimbursement of out-of-pocket medical expenses, and a family separation allowance ("FSA") for the period of time he was attending Civil Affairs School (April 29 through May 25, 2012).  *Id.* ¶¶ 295(1)–(2).

The First Amended Complaint also added a challenge to Plaintiff's March 2016 and March 2017 separations from active duty.  Specifically, in Part B, Plaintiff alleged that: (1) the USMC's conditioning his Medical Hold orders on the execution of sanctuary waivers was unlawful; (2) the Secretary did not delegate authority to HQMC to require Plaintiff's sanctuary waivers; (3) Plaintiff's blanket sanctuary waivers and continuous orders exceeding 179 days were contrary to law and procedure; (4) the law permitted the Secretary to require a sanctuary waiver only when a reservist is initially ordered to active duty, not subsequent orders to retain or continue him or her on active duty; (5) HQMC did not properly approve Plaintiff's requests for sanctuary waivers in accordance with procedure; (6) Plaintiff was entitled to sanctuary zone protection based on travel to his home of record on March 24, 2016; and (7) the USMC failed to provide Plaintiff with a separation physical examination and pre-separation counseling and discharged him with an unresolved medical issue contrary to law and procedure.  *Id.* ¶¶ 249, 255, 260–61, 269, 272–79, 284–85, 287–92.  As relief, Plaintiff requested a correction of his military records reflecting that he continued on active duty beyond March 23, 2016, until he was found fit for duty or completed the disability evaluation process or, in the alternative, until he reached 20 years of active duty

service, as well as all associated back pay, allowances, and benefits to which he otherwise would have been entitled. *Id.* ¶¶ 295(3)(a)–(b).

On April 16, 2020, the Government moved to remand the claims in Plaintiff's First Amended Complaint to the BCNR. Def.'s Mot. to Remand at 1, ECF No. 24. Although Plaintiff initially opposed remand, the parties engaged in discussions that resulted in Plaintiff withdrawing his opposition and the parties proposing agreed-to remand instructions. Def.'s Notice Regarding Mot. for a Voluntary Remand at 1, ECF No. 34. The Court granted the Government's request, pursuant to the parties' agreement, on March 10, 2021. *See* Order Staying Case, ECF No. 35.

### 4.   The BCNR's Second Remand Decision

On August 9, 2021, the BCNR issued its second remand decision. AR 1. Regarding his Part A claims (the 2012 separation), the BCNR denied Plaintiff any further relief beyond what it deemed appropriate in November 2019. AR 3–4. The BCNR specifically rejected Plaintiff's claim for entitlement to a constructive service credit through December 6, 2012, finding it would be a "windfall" and noting that in the real world, Plaintiff was already demobilized on the date he was found fit for duty. AR 4. The Board also reiterated that it did not have authority to grant Plaintiff's request for out-of-pocket expenses and for a FSA payment, as any amounts owing must be determined by TRICARE and the Defense Finance and Accounting Service ("DFAS"), respectively. AR 4–5. Following the BCNR's second decision, the Government paid Plaintiff the FSA and the out-of-pocket medical expenses to which it determined he was entitled. Def.'s Notice of Dec. Regarding Med. Expenses at 1–2, ECF No. 61; Attach. to Def.'s Notice of Dec. Regarding Med. Expenses at 1–2, ECF No. 61-1.

Regarding Plaintiff's Part B claims (the 2016–2017 separations), the BCNR primarily denied Plaintiff relief. *See* AR 5–15. The BCNR found no error or injustice in the USMC's

conditioning Plaintiff's active duty orders for purposes of Medical Hold on the execution of sanctuary waivers, or in separating Plaintiff—notwithstanding his unresolved medical issue—due to his refusal to waive sanctuary.  AR 8–11, 13–14.  It also rejected all but one of Plaintiff's remaining claims.  Specifically, the Board found that HQMC possessed the proper delegated authority to require Plaintiff to execute sanctuary waivers.  AR 11.  It found no error in the practice of using blanket waivers or back-to-back orders, which each specified a period of 179 days or less and otherwise conformed to the law.  AR 12.  It likewise rejected the notion that waivers may be required only for initial orders to active duty, as opposed to orders extending active duty, citing Marine Corps Order ("MCO") 1001.61A's express waiver requirement for reservists on Medical Hold.[2]  *Id.*  The Board also found that any procedural failures in the notification and approval process for Plaintiff's sanctuary waivers did not render them invalid, as the fact that HQMC issued the orders implied that it approved the waivers.  AR 12–13.  However, it agreed that the USMC unlawfully failed to provide Plaintiff with a separation physical examination and pre-separation counseling.  AR 13.  It nonetheless found that error harmless.  *Id.*

##### 5.   Plaintiff's Second Amended Complaint and The Court's Decision

On September 14, 2021, Plaintiff filed a Second Amended Complaint challenging the BCNR's August 2021 Decision.  *See* Pl.'s Second Am. Compl., ECF No. 42.  The parties filed Cross-Motions for Judgment on the Administrative Record.  *See* Def.'s Mot. for J. Admin. R., ECF

---

[2] MCO 1001.61A provides policy guidance on the application of sanctuary waiver to reservists on Medical Hold.  *See* MCO 1001.61A, ch. 3, ¶ 7 (Feb. 22, 2013).  According to that order, if a reservist's "initial placement or subsequent extension" on Medical Hold will cause him or her to exceed 18 years of active duty service, then the Deputy Commandant Manpower & Reserve Affair ("DC M&RA") "can withhold the issuance of [active duty] orders if the reservist fails to execute a waiver of sanctuary eligibility as part of their consent to be continued on active duty for medical observation, evaluation or treatment."  *Id.*  The policy requires that a separate request be executed for each 179-day order, which if approved "would be back-to-back, and not extending the original set."  *Id.*, ch. 2, ¶ 5(c).

No. 45; Pl.'s Cross-Mot. for J. Admin. R., ECF No. 48; Def.'s Opp'n & Reply, ECF No. 51; Pl's Reply, ECF No. 53.  On March 1, 2023, the Court granted in part and denied in part the parties' claims. *Marshall*, 164 Fed. Cl. at 583.

With respect to Plaintiff's Part A claims, the Court determined that Plaintiff was entitled to additional constructive service credit beyond November 6, 2012, but not the full 30 days he sought. *See id.* at 590–93.  The Court held that the BCNR's denial of active duty service credit beyond November 6, 2012, was arbitrary and capricious because it was apparent that, if Plaintiff had been retained on active duty for Medical Hold on April 28, 2012, then he likely would have remained on active duty for an additional period of time beyond November 6, 2012, in order to out-process and return to his home of record. *See id.* at 591–92.  The Court determined that this additional period would have been 10 working days based upon an e-mail to Plaintiff from the BIA, which administers Medical Holds, and a counseling form signed by Plaintiff. *See id.* at 592. However, the Court also concluded that the BCNR rationally rejected Plaintiff's request for additional constructive service credit based upon "terminal leave" because the USMC's policy did not permit the use of such leave at the conclusion of Medical Hold and, in any event, Plaintiff was paid a lump sum for accrued leave that resulted from his constructive service time. *Id.*  Next, the Court agreed with the BCNR that the Board does not have authority to grant Plaintiff out-of-pocket medical expenses, and he would need to pursue reimbursement through the appropriate disbursing authority to recoup those costs. *Id.* at 593–44.  The Court lastly held that the Government's payment of additional FSA rendered Plaintiff's claim on that issue moot. *Id.* at 591.

With respect to Plaintiff's Part B claims, the Court held that pursuant to Department of Defense Instruction ("DoDI") 1241.01, the USMC had no obligation, absent his consent, to

continue Plaintiff on active duty for the purpose of Medical Hold.[3]  *Id.* at 594–96.  The Court, however, held the BCNR erred in finding that the USMC lawfully conditioned Plaintiff's active duty orders for Medical Hold on the execution of a sanctuary waiver.  *Id.* at 596–99.  With regard to the remainder of Plaintiff's claims, the Court held that (1) the Secretary of the Navy delegated authority to HQMC to condition active duty orders on the execution of a sanctuary waiver; (2) the BCNR rationally concluded that HQMC approved Plaintiff's requests for sanctuary waivers; and (3) the USMC's failure to afford Plaintiff a separation physical and pre-separation counseling before his release from active duty in 2017 were non-prejudicial errors.[4]  *Id.* at 599–603.  The Court entered judgment on July 21, 2023, adopting the parties' jointly proposed language.  *See* Order, ECF No. 72; Judgment, ECF No. 73.

After judgment was entered, Plaintiff timely filed a motion seeking attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  *See* Pl.'s Mot. for Att'y Fees, ECF No. 75.  Plaintiff argues that he is the prevailing party and that the Government's position in this litigation was not substantially justified.  *Id.* at 4–8.  In response, the Government does not appear to dispute that Plaintiff is the prevailing party but argues that the Government's overall position was substantially justified.  *See* Def.'s Resp. to Mot. for Att'y Fees at 22–32, ECF No. 79.  In the alternative, the Government contests that Plaintiff is entitled to the full amount of fees sought in

---

[3] The Secretary of the Navy, when authorized by the Secretary of Defense, may order a reservist to active duty or retain a reservist on active duty for purposes of authorized medical care or disability evaluation "with the consent of the member."  10 U.S.C. § 12301(h)(1); *see id.* § 12301(h)(2).  This authority is implemented, in part, by DoDI 1241.01, which mandates the retention of certain reservists, with their consent, on active duty for the purpose of completing medical care or the disability evaluation process.  *See* DoDI 1241.01, ¶ 3 (Apr. 19, 2016).  DoDI 1241.01 recognizes that a reservist "[m]ay elect to be released from active duty before resolution of the conditions or completion of the DES process."  *Id.* ¶ 3.a(2)(b).

[4] Plaintiff withdrew his argument that he was entitled to sanctuary protection based upon his travel to his home of record on March 24, 2016.  *See* ECF No. 48 at 1 n.1.

his motion. *Id.* at 33–37. Plaintiff filed his Reply on December 15, 2023. *See* Pl.'s Reply, ECF No. 85. Accordingly, the motion is ripe for decision.

## II. LEGAL STANDARDS

EAJA creates "an exception to the general rule that plaintiffs may not recover attorney's fees from the United States." *Turner v. United States*, 165 Fed. Cl. 411, 415 (2023) (citing 28 U.S.C. § 2412(d)(1)(A); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)). Plaintiffs may only recover attorney's fees under Section 2412(d) when: (1) the plaintiff is a "prevailing party;" (2) the Government's position was not "substantially justified;" (3) no "special circumstances make an award unjust;" (4) the fee application is submitted within 30 days of final judgment; and (5) the prevailing party has a net worth as an individual of less than $2,000,000 at the time the action was filed. 28 U.S.C. §§ 2412(d)(1)(A)–(B), (d)(2)(B); *see Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990).

In this case, the Government only contests the second of these requirements, substantial justification. The Government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ("We are of the view, therefore, that as between the two commonly used connotations of the word 'substantially,' the one most naturally conveyed by the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main.'"). "[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct." *Id.*

Trial courts have discretion in assessing whether the Government's position is substantially justified. *Id.* at 552, 561–62; *Chiu v. United States*, 948 F.2d 711, 715 n.4 (Fed. Cir. 1991) ("It is for the trial court to weigh each position taken and conclude which way the scale tips[.]"). When

making that assessment, "trial courts are instructed to look at the entirety of the government's conduct." *Chiu*, 948 F.2d at 715; *Jean*, 496 U.S. at 161–62 ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."). That overall assessment allows consideration of all positions taken in litigation, not just consideration of the merits. *See DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1343–44 (Fed. Cir. 2012); *see also Chiu*, 948 F.2d at 715 n.4 ("[W]hether the government was substantially justified overall where in litigation it depended on the ground of lack of jurisdiction and a party prevails on a substantive aspect of the agency's action which gave rise to the litigation necessarily involves an apples to oranges comparison.").

Furthermore, the Court considers "the clarity of the governing law, that is, whether, at the time of the dispute, 'judicial decisions on the issue left the status of the law unsettled,' . . . and whether the legal issue was novel or difficult." *Norris v. S.E.C*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Nalle v. Comm'r of Internal Revenue*, 55 F.3d 189, 192 (5th Cir. 1995)). Where a novel issue presents a "genuine dispute" in which "reasonable people could differ" regarding the appropriateness of the Government's actions, courts tend to find the Government's position to be justified. *DGR Assocs.*, 690 F.3d at 1341 (quoting *Pierce*, 487 U.S. at 565–66); *Ellis v. United States*, 711 F.2d 1571, 1577 (Fed. Cir. 1993) (affirming a denial of EAJA fees where the Government made a "facially respectable argument" on a novel issue (internal citation and quotation marks omitted)); *Ulysses Inc. v. United States*, 117 Fed. Cl. 772, 778 (2014).

## III. DISCUSSION

Since the parties do not dispute that Plaintiff prevailed in this litigation, the Court's task is to determine whether the Government's overall position was substantially justified. For the

reasons stated below, the Court finds that the Government's overall position on Plaintiff's Part A claims was substantially justified, though its prelitigation conduct lacked substantial justification. And, since the Government's prelitigation conduct and litigation position with respect to Plaintiff's Part B claims was also substantially justified, in total, the Government's overall position was substantially justified.

### A. The Government's Position with Respect to Plaintiff's Part A Claims Was Substantially Justified.

While the Court's task is to evaluate, based on the "totality of the circumstances," whether the Government's position was substantially justified, *Essex Electro Eng'rs, Inc. v. United States*, 757 F.2d 247, 253 (Fed. Cir. 1985), it must, as an initial matter, recognize that the Government's prelitigation conduct with respect to Plaintiff's Part A claims was *not* substantially justified. The bulk of Plaintiff's Part A claims regarding the Government's prelitigation conduct centers around Plaintiff's unanswered inquiries and requests for compensation for medical bills and loss of income due to the injury he sustained in 2012. *See* ECF No. 75 at 5–7; ECF No. 85 at 2–3. Plaintiff first notified the USMC that the injury he sustained on active duty was going to require medical care and surgery as early as July 2012. AR 132. Plaintiff continued to seek administrative relief, including through a Commanding General investigation that directed a line of duty determination be made to address Plaintiff's issues, as well as through a formal Administrative Action request in March 2017. AR 163–70. Despite these attempts, however, the record reflects that the USMC did not take meaningful action to resolve Plaintiff's complaints, either by notifying him if his filings were administratively deficient or by following up on his inquiries to appropriate authorities. *See, e.g.*, AR 132–70. While some delay in bureaucratic processes is understandable, years of relative agency inaction is not. *See Prochazka v. United States*, 116 Fed. Cl. 444, 455 (2014) ("The Navy's

prelitigation conduct in this case evidences a pattern of dilatory tactics and unreasonable behavior.").

Notwithstanding the above, the Government's subsequent litigation position was substantially justified. After Plaintiff filed his initial Complaint, the Government took the position that the case should be remanded to the BCNR to address Plaintiff's separation from active duty in 2012. ECF No. 9 at 1. Importantly, the parties worked cooperatively to draft proposed remand instructions to the Court, and the Court ultimately granted the Government's unopposed motion. *See id.* at 1–3; ECF No. 10. On remand, the BCNR granted the thrust of Plaintiff's requested relief, concluding that Plaintiff's records should be corrected to show that he was on active duty Medical Hold from April 28 through November 6, 2012, and that he should receive back pay accordingly. AR 41. However, the BCNR also concluded that Plaintiff was not entitled to back pay and active duty service credit for the period of April 29 through May 25, 2012, because he was already on active duty at that time, nor should he be compensated for out-of-pocket expenses because he first needed to seek relief through the administrative claims process. *Id.* Thus, when Plaintiff filed his First Amended Complaint challenging the BCNR's denial of (1) active duty service credit for the period of November 7 through December 6, 2012; (2) out-of-pocket medical expenses; and (3) FSA for the period of April 29 through May 25, 2012, the issues before the Court had substantially narrowed.

After the BCNR's first remand, when the matter was back before this Court, the Government again took the position that Plaintiff's Part A claims should be remanded to the BCNR, as the Board could potentially grant Plaintiff further relief and further narrow the issues in dispute without Court intervention. *See* ECF No. 24 at 1. While Plaintiff initially opposed the Government's position, the parties again worked together regarding the terms of the remand—and,

again, the Court subsequently granted the Government's then-unopposed remand request. *See* Pl.'s Resp. to Def.'s Mot. to Remand at 1, ECF No. 27; ECF No. 34 at 1; ECF No. 35 at 1. The Government's conduct at this time demonstrates its amenability and willingness to work with Plaintiff to resolve his claims without the need for Court intervention, and its request for remand was justified.

In addition, although the BCNR denied Plaintiff further relief in its second remand decision, the Board clarified that its earlier decision did not preclude Plaintiff from obtaining any allowances for the period of April 28 through May 25, 2012, that would have accrued as a result of the correction of records. *See* AR 2–5, 15. As such, following the second decision of the BCNR, the Government paid Plaintiff both the FSA he sought and nearly all of the out-of-pocket medical expenses Plaintiff claimed (specifically, $960.88 out of the claimed $1,136.83). *See* ECF No. 61 at 1–2; ECF No. 61-1 at 1–2; *Marshall*, 164 Fed. Cl. at 591. Plaintiff ultimately did not pursue a claim for his remaining out-of-pocket expenses with the Court. *See id.*

Furthermore, upon review of the briefing on the parties' cross-motions for judgment on the administrative record, the Court concludes that the Government's position with respect to Plaintiff's Part A claims was substantially justified. ECF No. 45 at 23–24. The central question here was whether the BCNR should have granted Plaintiff additional days of constructive service credit, beyond November 6, 2012, for out-processing and traveling to his home of record after being found fit for duty, even though Plaintiff was already at his home of record during this time. *Marshall*, 164 Fed. Cl. at 590–93. The Government took the position that Plaintiff was not entitled to "double recovery" through additional constructive service time to account for out-processing and travel to his home of record when he had, in fact, already out-processed and traveled to his home of record during his period of active duty. ECF No. 45 at 23–24. In taking this position, the

Government relied on DoDI 1241.2, which provides that "[a] Reserve component member on active duty under a call or order to active duty specifying a period of 31 days or more, who incurs or aggravates an injury, illness, or disease in the line of duty shall, with the member's consent, be continued *on active duty* upon the expiration of call or order to active duty *until the member is determined fit for duty*[.]"  DoDI 1241.2 ¶ 6.6.3.2 (May 30, 2001) (emphasis added).

The Court ruled for Plaintiff on this question, holding that by denying Plaintiff constructive service credit from November 6, 2012, onward, the BCNR did not place Plaintiff in the position he would have been in had the USMC conducted the required separation examination and pre-separation counseling. *Marshall*, 164 Fed. Cl. at 591–92.  The Court explained that had Plaintiff been found fit for duty on November 6, 2012, the USMC would have provided him with some amount of time to out-process and travel home before separating him from active duty. *Id.* at 592. Other evidence in the record showed that time period would be up to 10 working days. *Id.*  In other words, the Court determined that "real world" events—i.e., that Plaintiff had already returned to his home of record by November 6, 2012—could not relieve the Board's duty to "fully erase" the USMC's error and make Plaintiff whole. *Id.* (citing *Roth v. United States*, 378 F.32 1371, 1381 (Fed. Cir. 2004)).

Though the Court ultimately held for Plaintiff, the Government was substantially justified in arguing that he was not so-entitled.  While it is true the Government did not attempt to determine, as best as possible, when Plaintiff would have been released in the hypothetical world where he had been properly retained, the Government's position was, in the most literal sense, compliant with DoDI 1241.2.[5]  Accordingly, this issue qualifies as a "genuine dispute" where "reasonable

---

[5] Plaintiff also contends that given the Court's "extensive deference" to the military, a subsequent "finding that the BCNR's factual decision was arbitrary and capricious tends to show that [the Government's] position was not substantially justified *per se* given that level of

people could differ" about the appropriate scope of relief.  *DGR Assocs.*, 690 F.3d at 1344 (explaining that a position is substantially justified "if a reasonable person could think it correct" (quoting *Pierce*, 487 U.S. at 565)).  Therefore, the Court concludes that the Government's overall position on Plaintiff's Part A claims was substantially justified.[6]

**B.      The Government's Position With Respect to Plaintiff's Part B Claims Was Substantially Justified.**

With respect to Plaintiff's Part B claims, which concerned challenges to Plaintiff's release from active duty in March 2016 and March 2017, the Government's prelitigation conduct was substantially justified.   Plaintiff's principal complaint with regard to the Government's prelitigation conduct concerns administrative delay unrelated to the merits of the sanctuary waiver issue, i.e., Code 13's delay in rendering a decision on his appeal of the March 2017 termination of his Medical Hold.  ECF No. 75 at 6–7.  Pursuant to the applicable Navy regulation, Code 13 has 30 days upon receipt of the appeal package from the BIA to render a decision on the case.  Secretary of the Navy Instruction 1770.3D ¶ 12(d) (Mar. 17, 2006).  Here, the BIA submitted Plaintiff's 382-page appeal package to Code 13 on December 11, 2017.  AR 491.  Therefore, as the Government conceded, Code 13 was indeed untimely when it issued its decision in Plaintiff's

_____

deference."  ECF No. 75 at 8.  But the "[s]ubstantially justified" requirement is not to "'be read to raise a presumption that the Government['s] position was not substantially justified simply because it lost the case.'"  *United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 50 (2010) (quoting *Scarborough v. Principi*, 541 U.S. 401, 415 (2004)).  Rather, substantial justification occurs somewhere between winning the case and being "merely undeserving of sanctions for frivolousness."  *Pierce*, 487 U.S. at 566.

[6] The parties' dispute over Plaintiff's Part A claims was a relatively small issue in this case and far less important than the merits of Plaintiff's claims regarding requests to execute sanctuary waivers in 2016 and 2017 (Part B claims).  Thus, the Government's position here weighs less heavily in the Court's analysis of whether the Government's overall position was substantially justified.  *See, e.g.*, *DGR Assocs.*, 690 F.3d at 1344 (giving less weight to a non-merits issue that was not the focus of litigation in assessing the Government's overall position).

case on July 30, 2018.  ECF No. 79 at 28 (citing AR 491, 873–91).  However, given the length of

the appeal package and complexity of the issues underlying Plaintiff's appeal—as discussed

below—Code 13's delay alone does not render the Government's prelitigation conduct as being

not substantially justified.

Further, the Government's litigation position with respect to Plaintiff's Part B claims was

substantially justified.  The Court described Plaintiff's Part B claims as "a multiple-front challenge

to the USMC's application of sanctuary waiver authority to active duty Medical Hold[,]" and the

ultimate resolution of Plaintiff's claims required the Court to wade into unsettled areas of the law

while considering the intersection of numerous statutes and regulations.  *Marshall*, 164 Fed. Cl. at

594; *see id.* at 583–86 (describing statutory and regulatory background, including various levels

of applicable military regulations).  The law being unsettled in this area tends to weigh in favor of

the issues being ones in "genuine dispute" and about which "reasonable people could differ[.]"

*DGR Assocs.*, 690 F.3d at 1341 (quoting *Pierce*, 487 U.S. at 565–66).

On the first issue, whether DoDI 1241.01 required the USMC, absent Plaintiff's consent,

to continue Plaintiff on active duty for the purposes of Medical Hold, the Government's position

was substantially justified.  The Court agreed with the Government that the USMC was not

required to continue Plaintiff on active duty absent consent to the terms and conditions of the

orders.  *Marshall*, 164 Fed. Cl. at 594–96.  Importantly, this holding is consistent with the Court's

prior conclusion in *Faerber v. United States*, 156 Fed. Cl. 715, 729 (2021), an opinion the Court

issued after the BCNR's second remand decision in the present litigation.  *Id.* at 594.  Here, the

Court recognized that *Faerber* presented a factually analogous case and involved the same

consideration of the interplay between DoDI 1241.01 and 10 U.S.C. § 12686(b), as well as whether

each plaintiff's order fell within the statutory criteria of the sanctuary waiver provision.  *Id.*

In *Faerber*, the USMC conditioned the further extension of a reservist's active duty orders for Medical Hold on his execution of a sanctuary waiver, and the plaintiff argued that such condition was unlawful given the mandatory obligation stated in DoDI 1241.01.  156 Fed. Cl. at 720–23, 728–29.  Like Lieutenant Colonel Marshall, the plaintiff in *Faerber* contended that he consented to Medical Hold orders by expressing his desire to remain on active duty for treatment and evaluation, and the USMC was thus required to issue the orders regardless of whether he complied with the USMC's sanctuary waiver condition.  *Id.*; ECF No. 48 at 31.  But the Court in *Faerber* rejected this argument, concluding that a reservist's *desire* to remain on active duty is not equivalent to *consent* to remain on active duty.  156 Fed. Cl. at 729.  Finding no reason to deviate from its conclusion in *Faerber*, the Court reached the same conclusion in this case: "[b]ecause Plaintiff refused to waive his sanctuary protections, and therefore did not yield to the terms of the USMC's offer to extend his orders, he did not consent (according to the plain meaning of that term) to remaining on active duty."  *Marshall*, 164 Fed. Cl. at 596 (citing *Faerber*, 156 Fed. Cl. at 731).  And, absent his consent, "the USMC had no obligation to extend Plaintiff's active duty orders to facilitate his Medical Hold."  *Id.*  By advancing an argument in line with the prior decision set forth by this Court in *Faerber*, the Government's position on this issue was substantially justified.  *See Patrick v. Shinseki*, 668 F.3d 1325, 1332 (Fed. Cir. 2011) (citing *Smith v. Principi*, 343 F.3d 1358, 1362 (Fed. Cir. 2003); *Essex Electro Eng'rs*, 757 F.2d at 253; *Bailey v. United States*, 721 F.2d 357, 360 (Fed. Cir. 1983)).[7]

---

[7] Plaintiff argued that the Court's holding in *Faerber* was erroneous because it failed to consider 10 U.S.C. § 1074, which provides that a servicemember on active duty "is entitled to medical and dental care in any facility of any uniformed service."  ECF No. 48 at 40 (citing 10 U.S.C. § 1074 (a)(1)).  While it is true that the arguments before the Court in *Faerber* did not rely significantly (or at all) on § 1074, the Court explained how its holding in *Faerber* was not inconsistent with § 1074 and instead harmonized other statutes and regulations at issue, including 10 U.S.C. § 12301(h), DoDI 1241.01, and 10 U.S.C. § 12686(b).  *Marshall*, 164 Fed. Cl. at 595–

On the next issue, whether the USMC lawfully applied the waiver authority in 10 U.S.C. § 12686(b) to Plaintiff, the Government's position was also substantially justified, even though the Court ruled against the Government.  The Court agreed with Plaintiff that § 12686(b) does not permit the USMC to condition back-to-back orders to active duty that individually covered 179 days or less but collectively amounted to 180 days or more.  *Marshall*, 164 Fed. Cl. at 597–99.  In reaching this conclusion, the Court again looked to *Faerber* for instruction.  *Id.* at 597.

In *Faerber*, the USMC issued the plaintiff an initial 183-day active duty order and several consecutive modifications (i.e., extensions) of the original order without requiring the execution of a sanctuary waiver.  156 Fed. Cl. at 721–22.  While each modification standing alone extended the plaintiff's orders for a period of less than 180 days, they had the effect of extending the total period of the orders to 538 days.  *Id.* at 722, 732.  The Court concluded that the plain language of § 12686(b) prohibited the USMC from conditioning the further modification of the plaintiff's orders on the execution of a sanctuary waiver, as incremental extensions of orders would "render the waiver provision's temporal limitation superfluous."  *Id.* at 733–36.  The Court echoed the same concern in its merits opinion here, explaining that the Government's reading of § 12686(b) made the statute's "temporal language . . . no limitation at all or . . . at best, hollow because it can be easily circumvented by changing the form of the order issued."  *Id.* at 597.  The only material difference between the facts of *Faerber* and this case is that the *Faerber* plaintiff's orders, as modified, exceeded the 179-day limit, whereas Lieutenant Colonel Marshall received back-to-back orders that on their face did not exceed 179 days.  *Id.*  Regardless, the Court held that reservists cannot lawfully be required to serve on active duty consecutively for hundreds of days on further

---

96.  If anything, the novelty of Plaintiff's argument concerning the consideration of § 1074 further tends to support that the Government's position on the issue had substantial justification.  *See DGR Assocs.*, 690 F.3d at 1341.

orders (either by extension or back-to-back) conditioned on the execution of a waiver, as such practice "would render the temporal language [of § 12686(b)] superfluous, void, or insignificant." *Id.* (internal quotation marks omitted).

Despite the Court's holding, the Government was substantially justified in arguing that conditioning Plaintiff's orders on the execution of sanctuary waivers was consistent with the statute. In adjudicating Plaintiff's case on remand, the BCNR relied upon MCO 1001.61A, which directs the USMC in the situation at bar to condition orders for Medical Hold purposes on the execution of a sanctuary waiver and to issue such orders as back-to-back orders of 179 days or less. *See* MCO 1001.61A, ch. 2, ¶ 5(c). (Feb. 22, 2013) (providing that "[e]ach 179 day order requires a separate request, signed waiver and decision by the DC M&RA" and "[i]f approved, orders would be back-to-back, and not extending the original set"). This internal guidance expressly contemplates the factual circumstances of Plaintiff's case, and the Board should not be penalized for attempting to follow the USMC's own regulations.[8] *See DGR Assocs.*, 690 F.3d at 1340 ("The SBA's parity regulations . . . were fully applicable to the Air Force and mandated the Air Force to proceed consistent with those regulations unless and until they were declared invalid by a court of competent jurisdiction.").

---

[8] Additionally, in defending the BCNR's decision, the Government posited that its interpretation of § 12686(b) gives effect to the waiver provision's temporal language because it requires the USMC every 179 days to decide whether to continue a sanctuary-eligible reservist on active duty. *Marshall*, 164 Fed. Cl. at 597. The Court was not persuaded by this argument, as it was unclear what end the Government's interpretation of the statute serves vis-à-vis sanctuary. *Id.* Nonetheless, this interpretation presented a "genuine dispute." *DRG Assocs.*, 690 F.3d at 1341. The Court did agree with the Government, however, that § 12686(b) places no explicit limit on the number of active duty orders the Secretary may condition on the execution of a sanctuary waiver so long as each order specifies a period of less than 180 days. *Marshall*, 164 Fed. Cl. at 598 ("[T]he waiver provision does not expressly prohibit the Secretary from ordering a sanctuary-eligible reservist to multiple, separate short-term periods of active duty under § 12301."). The Government's position on this aspect of the issue, though not raised by the facts of this case, was substantially justified.

At the time the BCNR issued its second remand decision, no court decision had reviewed whether MCO 1001.61A is consistent with the scope of the Secretary's waiver authority under § 12868(b).  Indeed, no court decision had addressed the effect of temporal limitation on sanctuary waivers in any scenario.  Since the Court issued its opinion in *Faerber* after the second remand concluded, there was no case law to inform the BCNR on how to interpret § 12686(b).  Moreover, the Court stresses that this case involved novel circumstances and legal arguments, and presented an issue of first impression for the Court.  That the law was unsettled and the legal question difficult qualifies the issue as being one in "genuine dispute" and about which "reasonable people could differ[.]"  *DGR Assocs.*, 690 F.3d at 1341 (quoting *Pierce*, 487 U.S. at 565–66); *see also Chiu*, 948 F.2d at 716 (placing a greater emphasis on the merits of the underlying claim than the Government's other actions in the matter).  Overall, the Government's position on this issue was substantially justified in light of the totality of the arguments the Government asserted, the novelty and complexity of the issues presented, and the lack of prior precedent.

*     *     *

Considering all the above, the Court concludes that the Government's overall position, including its factual and legal positions throughout the dispute, was substantially justified.

## IV.  CONCLUSION

For these reasons, Plaintiff is not entitled to recover attorney's fees under EAJA.  28 U.S.C. § 2412(d)(1)(A).  Accordingly, Plaintiff's motion for attorney's fees (ECF No. 75) is **DENIED**.

**SO ORDERED.**


Dated: June 25, 2024                          */s/ Kathryn C. Davis*
                                               KATHRYN C. DAVIS
                                               Judge